Judge John C. Coughenour
Magistrate Judge S. Kate Vaughan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALAN GOMEZ-MARENTES,

Defendant.

NO. CR 20-92 JCC

GOVERNMENT'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION FOR TEMPORARY
RELEASE

## I.    INTRODUCTION

The United States of America, by and through Nicholas W. Brown, United States

Attorney for the Western District of Washington, and Amy Jaquette, Assistant

United States Attorney for said District, respectfully submits this response in opposition

to Defendant Alan Gomez-Marentes' Motion for Temporary Release (Dkt. 589).  The

defendant again argues that FDC SeaTac has failed to adequately treat his leg injury and

that he is no longer a risk of flight because of his ties to Washington and lack of interest

in returning to Mexico.  As with Defendant's previously denied motion to reopen his

detention hearing (Dkt. 494), he does not address the safety of the community.  The

1  government opposes temporary release and maintains that the defendant should be
2  detained pending trial.

3  ## II.    PROCEDURAL HISTORY

4       On July 23, 2020, the Grand Jury returned an Indictment charging the defendant
5  with Conspiracy to Distribute Controlled Substances (Count 1), in violation of Title 21,
6  United States Code, Sections 841(a)(1) and 841(b)(1)(A); Possession with Intent to
7  Distribute Methamphetamine (Count 2), in violation of Title 21, United States Code,
8  Sections 841(a)(1) and 841(b)(1)(A); and Conspiracy to Commit Money Laundering
9  (Count 4), in violation of Title 18, United States Code, Section 1956(h).  Dkt. 1.

10       On July 28, 2020, law enforcement arrested the defendant in a series of
11  coordinated arrests and search warrants.  The government filed a motion for detention, as
12  well as an Omnibus Detention Motion detailing the background of the case.  Dkts. 90, 79.
13  On August 4, 2020, the defendant filed a Stipulation and Waiver of Detention Hearing.
14  Dkt. 131.  On August 6, 2020, the Court ordered the defendant detained pending trial and
15  issued a detention order.  Dkt. 150.

16       On March 31, 2021, the Grand Jury returned a second superseding Indictment
17  charging the defendant with the same counts, in addition to Possession with Intent to
18  Distribute Methamphetamine and Heroin (Count 5), in violation of Title 21, United States
19  Code, Sections 841(a)(1) and 841(b)(1)(A).  Dkt. 378.

20       An order continuing detention was filed on April 1, 2021.  Dkt. 380.  Arraignment
21  was held on April 15, 2021, and the defendant entered a not guilty plea.  Dkt. 463.  Trial
22  is scheduled for May 2, 2022. *Id.*

23       On May 27, 2021, the defendant filed a motion to reopen the detention hearing
24  based largely on the need for treatment of the same lower leg injury at issue here.  Dkt.
25  494.  On June 14, 2021, the Court denied the motion.  Dkt. 514.  The Court noted that,
26  "the Defendant does not challenge the findings of Magistrate Judge Mary Alice Theiler in
27  the Detention Order that Defendant's criminal record included a prior drug trafficking

28

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 2

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conviction from the Eastern District of Washington, that because he was without legal status in the United States defendant was deported to Mexico after his release from prison, and that Defendant was alleged to be a leader of the drug conspiracy." *Id.* at 4. As to the only change in circumstance – the leg injury – the Court found that "the record demonstrates an ongoing effort by BOP staff to address Defendant's medical needs, including pain management and referrals to specialists to assess surgical intervention options." *Id.* at 4.  The Court also noted the BOP physician's request that Harborview reevaluate the defendant's request for surgery, with his complete record and recent x-rays. *Id.* at 5.  The Court went on to find that the defendant's medical allegations did not rise to the level of being material in light of the Section 3142(g) factors:

> Defendant's criminal history, (involving a prior federal controlled substances felony), the nature and circumstances of the case (allegedly leading a significant drug trafficking organization in the processing and distribution of large amounts of methamphetamine, and related money laundering and firearms trafficking), and his connection to Mexico, establish that Defendant cannot overcome the presumption that he is both a risk of flight and a danger to the community.

*Id.* at 7.

On November 4, 2021, the defendant filed the instant motion, again based on the alleged failure to adequately treat his leg injury.  Dkt. 589.

### III.      FACTUAL BACKGROUND[1]

**A.      The Underlying Investigation**

As detailed in the Government's Omnibus Detention Motion, Dkt. 79, which is incorporated herein, this case arises out of a multi-agency investigation involving the Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and Internal Revenue Service (IRS).  They, together with other state

---

[1] For ease of review, the undersigned has included many of the facts leading up to the litigation of the defendant's motion to reopen detention, in addition to information about what has happened since that litigation.

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 3

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and local law enforcement agencies, have been investigating a drug trafficking

2   organization (DTO) operating throughout Western Washington believed to be tied to the

3   Jalisco New Generation Cartel (CJNG) in Mexico.  During the investigation, agents

4   conducted thousands of hours of physical and electronic surveillance, seized more than

5   140 pounds of methamphetamine during interdiction stops, intercepted hundreds of

6   phone calls and text messages, executed search warrants at DTO members' residences,

7   and utilized various other law enforcement techniques.

8           The defendant's role in the DTO is explained at pages 6-9 of the motion – in sum,

9   the defendant served as the top indicted-leader of the DTO, managing numerous other

10  indicted persons in the distribution of methamphetamine, heroin, cocaine, and fentanyl-

11  laced pills in the Western District of Washington.  The defendant organized regular

12  shipments of drugs from Mexico into Washington.  In November 2019, as further

13  detailed in the memorandum, the defendant brought one such shipment of liquid

14  methamphetamine concealed within candles into Washington.  The defendant then

15  worked with other DTO members to convert this methamphetamine into crystal form at a

16  Port Orchard location.  When another DTO member, Jose Elias Barbosa, was shot at this

17  location, the defendant instructed multiple DTO members to clear the location of

18  evidence of drug trafficking and asked his sister, Ruth Gomez-Marentes, to change their

19  phone numbers to further evade law enforcement.  Investigators subsequently seized the

20  van used to clear out the location, and recovered approximately ten pounds of crystallized

21  methamphetamine, two igloo coolers with liquid methamphetamine in the process of

22  crystalizing, and one igloo cooler that appeared to contain a methamphetamine/ wax

23  mixture.  Another such seizure occurred on June 5, 2020, as detailed in the memorandum,

24  when Border Patrol investigators seized approximately 78 pounds of methamphetamine

25  destined for the defendant in Washington.

26          Of particular relevance to the detention question are multiple intercepted

27  communications detailing the defendant's involvement with debt collection and firearms

28

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 4

trafficking.  As detailed further in the memorandum, on March 20, 2020, Ruth Gomez-Marentes told her mother that the defendant paid some guys to pick up a debtor named "Matthew" to beat him up.  On April 10, 2020, the defendant asked codefendant Jose Daniel Espinoza to gather "as many toys [guns] as you can" . . . "So I can take them down."  With respect to "Chino" and others in debt to him, the defendant said, "this is about me getting, grabbing them and tying them up with a strap like a fucking dog."  On July 3, 2020, the defendant told Espinoza that an individual to whom he fronted drugs "needed a beating."  On July 7, 2020, referencing debtor "Chino," the defendant said he wanted to "fuck him up… I seriously want to fuck him up, old man.  Please tell me that tomorrow morning you are going to help me get him."  On July 10, 2020, the defendant had further conversations regarding "Chino" and his location with codefendant Luis Magana-Ramirez, and asked if they should take care of the "mission now."

During the takedown on July 28, 2020, agents arrested the defendant and his girlfriend, indicted defendant Blanca Medina, at the Emerald Queen Casino.  A search of the defendant revealed a small bag of methamphetamine and $1,743.  A search of Medina revealed $3,720.  A search of their shared apartment revealed a suitcase containing approximately 3,290 gross grams of meth, 1,754 gross grams of heroin, and 44 gross grams of cocaine.  Agents also found $15,980 in a dresser drawer.  Further, a search of Blanca Medina's alternate residence in California resulted in the seizure of an estimated $299,840.

The defendant's criminal history includes a 2006 felony conviction in the Eastern District of Washington for Conspiracy to Distribute Cocaine (24 months' imprisonment and four years' supervised release), a 2004 gross misdemeanor conviction for refusal to give information/cooperate with an officer, and a 2002 deferred disposition (which resulted in a dismissal of the charge) for taking a motor vehicle without permission.  Following completion of his federal prison term in January 2010, he was deported to Mexico on January 30, 2010.

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 5

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.      The Defendant's Medical Condition**

The defendant's medical records reveal that the defendant has a leg injury which may need to be treated with further surgery.  Def. Sealed Exh. 1-3.  On August 18, 2020, BOP medical records reflect that the defendant fractured his leg over a year before (which would be prior to August 2019).  Def. Sealed Exh. 1 at 86.  He had pins in his leg which were apparently removed because of infection.  *Id.*  The defendant had an ORIF (open reduction and internal fixation) procedure done, which was complicated by infection and malunion.  Def. Exh. 2 at 10.  Prior to arrest, the defendant apparently saw a traumatologist in California who recommended another ORIF to straighten the leg.  *Id.* The defendant never had this operation.

BOP records reflect a number of visits during the defendant's incarceration related to this leg injury, a plan of care, and pain management.  For example, on September 21, 2020, the defendant requested an ortho boot.  Def. Sealed Exh. 1 at 24.  He indicated that he had weight-bearing pain regularly, but no acute pain at the moment.  *Id.*  The BOP requested the defendant's prior surgeon's contact to obtain the medical records.  They also responded by providing a lower bunk, crutches, reviewing an X-ray with the defendant, requesting an ortho consult, and prescribing pain medication.  *Id.*  Although no ortho boot was available, staff provided the defendant with a large ace wrap for comfort and noted that the alternative splint appeared to be too rigid for the defendant. *Id.*  As discussed below, medical staff sent a referral for the defendant to be seen by Virginia Mason and later Harborview doctors.  A note from May 2021 also indicates that BOP medical staff requested that a radiologist compare the defendant's 2021 scan to a 2020 scan to determine whether arthritis is progressing in the defendant's leg.  Def. Sealed Exh. 1 at 20.

Consistent with these records, the defendant has complained of pain during a number of medical appointments.  *E.g.* Def. Sealed Exh. 1 at 11 (Oct. 28, 2020); Def. Sealed Exh. 2 at 28 (Jan. 3, 2021); *id.* at 12 (April 27, 2021); *id.* at 10 (May 3, 2021); *id.*

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 6

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   at 6 (June 28, 2021).  Medical staff responded with attempts to manage the defendant's

2   pain with a variety of pain medications, based on the defendant's feedback regarding

3   which were effective, including ibuprofen, acetaminophen, meloxicam, and lidocaine

4   patches.  *Id.*  A May 3, 2021 medical note stated that the defendant is "very physically

5   active and sometimes does burpies.  He doesn't feel his pain hinders his fxn [function]."

6   Def. Sealed Exh. 2 at 10.

7         On November 19, 2020, BOP medical staff sent the defendant for a consultation at

8   Virginia Mason.  Def. Sealed Exh. 3.  The Virginia Mason doctor indicated that the

9   defendant was shot in 2019 and went to see a traumatologist down in California who

10  recommended the ORIF to straighten out the defendant's leg bone.  *Id.*  The notes further

11  indicate that the California traumatologist discussed the potential for an implant

12  arthroplasty (ankle replacement) to treat the defendant's ankle arthritis, but that the

13  defendant "decided to let it [the arthritis] be."  *Id.*  The notes then indicate that the

14  defendant is seeking to get his leg fixed because of the pain.  The evaluation reflects that

15  the defendant's "ankle joint actually moves pretty well with adequate dorsiflexion and

16  plantar flexion," and that the defendant has a "pretty significant malalignment of his

17  lower leg," consistent with his X-rays.  The evaluation also indicated tenderness in

18  certain places.  *Id.*  The Virginia Mason doctor reviewed the management options with

19  the defendant and concluded that any potential treatment needed to be evaluated and

20  completed by a traumatologist.  *Id.*  The doctor recommended sending the defendant for

21  evaluation by Harborview Medical Center.  *Id.*  The doctor said that if he does have

22  posttraumatic arthritis and "he would rather just live with this and see how it goes in the

23  next several years I think that is fine.  I think he is pretty young to be considering an

24  ankle arthroplasty as it would wear out pretty quickly" with the physical activity the

25  defendant likes to do.  *Id.*  The defendant apparently agreed.  *Id.*  The doctor further

26  stated that he would attempt to get the referral to Harborview set up "as certainly this

27  looks like something that needs to be fixed sooner rather than later."  *Id.*

28

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 7

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    On December 14, 2020, the defendant's BOP doctor indicated that he was pending

2    evaluation for surgery at Harborview.  Def. Sealed Exh. 1 at 4.

3    On February 8, 2021, according to the attached email chain, a Correctional Account

4    Coordinator from Seven Corners spoke to a scheduler at Harborview who indicated that

5    the doctor reviewed the materials sent regarding the defendant's leg injury and "doesn't

6    feel it is urgent and states he is more than willing to see the IM [inmate] once he releases

7    from prison."  Sealed Exh. 1 at 3.  When the Correctional Account Coordinator explained

8    this would be a very long time, the scheduler indicated that BOP staff could send

9    additional information to demonstrate the urgency if available and she could revisit the

10    referral with the Harborview doctor.  *Id.*

11    On February 19, 2021, the same Correctional Account Coordinator reached out

12    directly to the FDC SeaTac Clinical Director and medical doctor with the above

13    information, asking for a recommendation.  *Id.*  The BOP doctor indicated, "This is not

14    an urgent matter.  I think we hold off for now and revisit this in 3-6 months."  *Id.* at 2.

15    On February 22, 2021, BOP medical records reflect that the Harborview surgeon

16    declined to see the defendant until he was out of prison and that Virginia Mason is unable

17    to treat his condition.  Def. Sealed Exh. 2 at 27.

18    On March 31, 2021, a nurse practitioner approved the defendant's lower bunk pass

19    until March 30, 2022, and a supportive ACE wrap "to help support and stabilize the

20    lower leg" until March 30, 2022.  Def. Sealed Exh. 2 at 48.

21    On June 2, 2021, the FDC SeaTac Clinical Director and medical doctor requested

22    that Harborview re-evaluate the defendant for leg surgery and indicated that BOP would

23    send the defendant's complete medical record to Harborview, including the recent left

24    ankle/foot X-ray from May 26, 2021.  Def. Sealed Exh. 2 at 9.  The doctor further

25    indicated that if Harborview declined to accept the referral again, he requests a second

26    opinion.  *Id.*

27

28

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 8

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    That same day, a nurse practitioner again approved the defendant's lower bunk pass
2    and a supportive ACE wrap "to help support and stabilize the lower leg" until March 30,
3    2022.  Def. Sealed Exh. 2 at 47.  The nurse practitioner also approved medical support
4    shoes until June 1, 2022 for recurring pain.

5    On July 27, 2021, the attached email chain reflects Harborview's response to the
6    June 2, 2021 second referral.  According to the email, Harborview indicated that, "after
7    reviewing the records, the Dr. [at Harborview] still is willing to see him 'once he is
8    released.'"  Sealed Exh. 2 at 1.

9    On August 6, 2021, the defendant requested refills on his lidocaine patches.  Sealed
10   Def. Exh. 2 at 5.  Medical staff honored the request, prescribing 1 to 2 patches per day on
11   an as needed basis for 180 days.  *Id.*  The prescription expires February 2, 2022.  Def.
12   Sealed Exh. 2 at 50.

13   On September 9 and October 6, 2021, the defendant complained of pain again and
14   requested use of a cane.

15   On September 24, 2021, Health Services saw the defendant for a sick call related to
16   a tooth with a prior root canal.  Def. Sealed Exh. 2 at 53-54.  Staff removed decay from
17   the tooth and filled an access point to the root canal.  *Id.*  They also recommended
18   extraction of the tooth at a later date, which the defendant refused.  *Id.* at 58.

19   On October 14, 2021, the FDC SeaTac Clinical Director reviewed the defendant's
20   medical equipment.  Def. Sealed Exh. 2 at 46.  He again approved the defendant's lower
21   bunk pass until March 30, 2022; medical support shoes until June 1, 2022 for recurring
22   pain; and a supportive ACE wrap "to help support and stabilize the lower leg" until
23   March 30, 2022.  The Clinical Director also allowed the defendant a cane to ambulate.
24   *Id.*

25   On October 25, 2021, Health Services staff saw the defendant for an unrelated issue.
26   Def. Sealed Exh. 2 at 1.  He did indicate ongoing pain from his left lower limb.  *Id.*

27
28

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 9

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# IV.   ARGUMENT

## A.   Standard for Temporary Release under 18 U.S.C. § 3142(i)

The defendant cites 18 U.S.C. § 3142(i) as authority for his temporary release
pending trial.  Section 3142(i) provides:

> The judicial officer may, by subsequent order, permit the temporary release
> of the person, in the custody of a United States marshal or another
> appropriate person, to the extent that the judicial officer determines such
> release to be necessary for preparation of the person's defense or for
> another compelling reason.

18 U.S.C. § 3142(i).  The defendant has alleged that his injury constitutes a compelling
reason; he has not argued for release to prepare for his defense.

Under Section 3142(i), the defendant bears the burden of establishing
circumstances warranting temporary release.  *United States v. Rhule*, No. 20-CR-105-
JCC, 2021 WL 63250, at *4 (W.D. Wash. Jan. 7, 2021) (citing *United States v. Terrone*,
454 F. Supp. 3d 1009, 1018 (D. Nev. 2020)).  The relief authorized by Section 3142(i) is
to be used "sparingly" – *United States v. Graham*, No. CR20-156RSM, 2021 WL 75256,
at *4 (W.D. Wash. Jan. 8, 2021) (citing *United States v. McKnight*, 2020 WL 1872412 at
*2-3, CR18-16-TSZ (W.D. Wash. Apr. 15, 2020)) – and under "extraordinary
circumstances." *United States v. Rebollo-Andino*, 312 F. App'x 346, 348, No. 09–1133
(1st Cir. Mar. 6, 2009).  As the defense notes, Def. Mot. at 7, relief also requires
a "particularized finding of necessity."  *See United States v. Stephenson*, 2020 WL
1811353 at *3 (W.D. Ky. Apr. 8, 2020); *United States v. Santana*, No. 1:19-CR-251,
2020 WL 1692010, at *3–4 (M.D. Pa. Apr. 7, 2020).  Moreover, courts do not consider
Section 3142(i) in a vacuum.  The original grounds for detention remain a factor.  *See
Rhule*, 2021 WL 63250, at *4 (balancing factors for Section 3142(i) release in COVID-19
context, including original basis for detention); *see also United States v. Wilburn*, No.
2:18-CR-115, 2020 WL 1899146, at *4 (W.D. Pa. Apr. 17, 2020) ("the overwhelming
majority of courts agree that an examination of the defendant's dangerousness and risk of
flight is appropriate when deciding a temporary release motion").

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 10

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Under this strict standard, motions have been granted when the detainee was suffering from terminal illness or serious injuries, like gunshot wounds, for which the Bureau of Prisons could not adequately provide medical care. *United States v. Noland-James*, No. CR19-261-RSM, 2020 WL 1904049, at *2 (W.D. Wash. Apr. 17, 2020); *see, e.g.*, *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y.1993) ("compelling reason" where defendant was terminally ill with AIDS, expected to live only a month or two, and would be released under a 24-hour guard at his own expense); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) ("compelling reason" where, during the incident leading to indictment, defendant sustained "serious" and "grotesque" gunshot wounds resulting in cardiac arrest and partial paralysis, loss of use of his hand, and where the U.S. Marshal's refused to take custody of the defendant until the open and infected wounds about his body closed).

**B.     The Defendant Has Not Met his Burden Under §3142(i) for Temporary Release**

The defendant fails to demonstrate a compelling reason for release under Section 3142(i). Although we are sympathetic to the record regarding the defendant's pain, that same record includes no medical opinion that another ORIF is medically necessary or imminently required. The record demonstrates that the defendant sustained this injury in or prior to August 2019, well before his July 2020 arrest. Although it appears that a California doctor recommended an ORIF procedure prior to the defendant's incarceration, no records are available from that doctor and there is no information as to when the California doctor recommended the procedure take place or as to the doctor's opinion on necessity.

The defense places great stake in the medical notes from Virginia Mason in November 2020. Def. Sealed Exh. 3. However, the Virginia Mason doctor elected to refer the defendant to Harborview because he was apparently not a traumatologist and the defendant's leg injury required an evaluation by an individual "more experience[d] with these types of complex orthopedic traumas." Although the Virginia Mason doctor

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 11

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  speculated that the injury "looks like something that needs to be fixed sooner rather than

2  later," the doctor did not opine on the necessity of another ORIF procedure and explicitly

3  acknowledged the need to call in a doctor with more pertinent expertise.

4      When called on, however, the Harborview specialists did not indicate that an

5  ORIF is medically and urgently needed.  Rather, they have twice indicated, most recently

6  after review of the records, that they will see the defendant once released, again providing

7  no support for the conclusion that surgery is necessary now.

8      Significantly, the defense itself also provides no independent medical doctor's

9  opinion to show that the surgery is necessary and that it must be done imminently.  It

10 relies instead on "consultation" with an unnamed "retired doctor," to speculate that the

11 surgery is too risky with a return to prison following surgery.  However, not even this

12 doctor has provided an opinion that the surgery is medically and imminently necessary,

13 nor is there any record evidence as to the doctor's qualifications or indication that the

14 doctor has evaluated and/or reviewed the medical records of the defendant.  Similarly, the

15 defense asks the Court to assume that the condition is "likely to get worse," Def. Mot. at

16 6, but there is again no medical opinion to support this.

17     The defense also contends that the defendant will never receive this surgery while

18 incarcerated.  However, the defendant is a pretrial inmate at a detention facility.  If

19 convicted – which could occur during the May 2022 trial or could occur earlier if the

20 defendant elects to plead guilty – he will of course be designated.  The defendant will

21 have an opportunity to provide all pertinent medical information to the Probation Office

22 for inclusion in a Presentence Report and the Court will be able to consider

23 recommending placement in a medical facility.  The BOP will continue to provide

24 medically necessary care, consistent with the Bureau of Prisons Patient Care Program

25 Statement which indicates a purpose of effectively delivering "medically necessary health

26

27

28

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 12

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  care to inmates."[2]  And, assuming the defense is correct about the lengthy rehabilitation
2  required after this surgery, any concern regarding the length of rehabilitation may be
3  mitigated by the fact that the defendant will be located at a particular facility through a
4  date certain.

5          This all said, there seems little question that the defendant's leg is painful.  The
6  medical records show that both the defendant and FDC SeaTac staff continue to work to
7  mitigate this pain, most recently by prescribing the defendant additional lidocaine patches
8  to be administered once or twice a day through February 2022 and by permitting the
9  defendant use of a cane, as requested.  Notably, Health Services also saw the defendant in
10  September and October 2021 for unrelated medical appointments.  These visits and
11  underlying records demonstrate that medical staff continue to treat and respond to the
12  defendant's medical needs on an ongoing basis.  However, to merit consideration of
13  temporary release, the defendant would need to show that another ORIF procedure will
14  provide relief and that it is needed now.  Without a medical doctor who shares the
15  defendant's belief in the urgency and necessity of this surgery, his burden has not been
16  met.

17          Finally, the defendant briefly alleges that he is being subject to cruel and unusual
18  punishment.  For the same reasons cited above, there is no support for this argument on a
19  record devoid of medical evidence to demonstrate either the necessity of the ORIF
20  surgery or the necessity of *immediate* surgery.  The only case cited by the defense
21  involves a prisoner who brought a 42 U.S.C. § 1983 civil rights action against prison
22  officials.  *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (deliberate indifference to
23  serious medical needs of prisoners is proscribed by the Eighth Amendment).  It does not
24  involve the Bail Reform Act or the question of release or detention pending trial.

25

26

27  _____
28  [2] https://www.bop.gov/policy/progstat/6031_004.pdf

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 13

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.      The § 3142(g) Factors Continue to Favor Detention**

Further, the defendant's medical condition cannot be considered without also looking to the original grounds for detention.  As the Court previously found, the Section 3142(g) factors justify detention.  Dkt. 514 at 7.  Nothing about the defendant's medical condition changes the Court's analysis – the defendant remains subject to the rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community"; he still has a prior federal controlled substances felony; he is still alleged to have led a significant drug trafficking organization which trafficked substantial quantities of methamphetamine, heroin, and fentanyl, and engaged in money laundering and firearms trafficking; he still faces substantial mandatory time; and he still has ties to Mexico.  Notably, although the defense has expressed that the defendant is not interested in returning to Mexico, there are a plethora of cities and states to which the defendant could flee both within the United States and without.  On this record, the defense has failed to meet its burden to justify release.

## V.      CONCLUSION

For all of the above reasons, the defendant's motion should be denied.

Dated this 12th day of November 2021.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

 s/ *Amy Jaquette*
AMY JAQUETTE
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101
amy.jaquette@usdoj.gov
(206) 553-7970

Opposition to Motion for Temporary Release
*United States v. Gomez-Marentes*, CR20-92 JCC — 14

UNITED STATES ATTORNEY
700 STEWART STREET SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970